IN THE UNITED STATES DISTRICT COURT
IN AND FOR THE SOUTHERN DISTRICT OF FLORIDA

EMPIRE INDEMNITY INSURANCE
COMPANY,

    Plaintiff,

v.                                              Case No.:    1:10-cv-21924

COVES AT ABERDEEN CONDOMINIUM
ASSOCIATION, INC.,

    Defendant.
_____/

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiff, EMPIRE INDEMNITY INSURANCE COMPANY ("Empire"), through undersigned counsel files this Complaint for Declaratory and Injunctive Relief against Defendant, COVES AT ABERDEEN CONDOMINIUM ASSOCIATION, INC. ("Aberdeen"), and alleges:

## GENERAL ALLEGATIONS

1. The appraisal panel needs judicial guidance because it is now clear that the insured's claim – by its own admission and documents – does not exceed the deductible except by invoking (1) the 2007 Florida Building Code, Existing, Chapter 6, Section 611.(1)(1), or (2) Florida Statute §626.9744, which are questions of law and coverage that are outside the scope of the appraisal process. *Nationwide Insurance Co. v. Cooperstock*, 472 So.2d 547 (Fla. 4th DCA 1985).

2. This is an action for declaratory judgment and injunctive relief pursuant to 28 U.S.C. § 2201, §2202, and Rules 57 and 65 of the Federal Rules of Civil Procedure.

3. The amount in controversy exceeds $75,000, as the insured's sworn proof of loss claims damages in excess of one million dollars, and their appraisal demand is in excess of two million dollars, which supports the jurisdictional amount.

4. Empire is a foreign corporation licensed to transact business in Palm Beach County.

5. At all times material, Aberdeen was a Florida corporation with its principal place of business in Palm Beach County, Florida.

6. Venue in the Southern District is proper because the real property that is the subject of the insurance policy in question is located in Palm Beach County, Florida.

7. This Court has jurisdiction pursuant 28 U.S.C. § 1332(a)(1) because the parties have complete diversity and the amount in controversy exceeds $75,000.

8. Empire issued to Aberdeen a Commercial Property policy of insurance numbered CP400971 ("The Policy").  The policy insured Aberdeen from April 25, 2005 to April 25, 2006. A copy of the insurance policy is attached as Exhibit "A" and all of its terms and conditions are incorporated herein.

9. Aberdeen is a condominium unit complex consisting of 14 condominium buildings.  The buildings are of joist masonry construction.  The roofs are concrete tile and the siding is stucco.

10. In a letter dated July 20, 2009, Michael Virkatis, a Public Adjuster with Claims Solvers, sent a letter to Empire advising that he represented Aberdeen in connection with damages to the roofs of the condominium buildings listed in the Policy that allegedly were caused by Hurricane Wilma, which impacted the property on or about October 24, 2005.  That letter was Aberdeen's first notice of loss to Empire.  The demand letter from Claims Solvers

sought recovery of $1,969,844.28 ($2,317,911.52 in estimated damages less the $348,067.24 deductible) and was accompanied by an estimate from Claims Solvers for replacing the roofs, and inclosing invoices for certain temporary roof repairs that had been made in the weeks following Hurricane Wilma.

11. Empire and its experts conducted an inspection of the buildings in August 20-21, 2009, and a report with findings regarding the alleged damages was prepared for Empire. Following receipt of that report, Empire communicated to the Aberdeen representative that the alleged damages to the roofs were below the deductible in the Policy. On January 8, 2010, Claims Solvers wrote to Empire invoking its right to appraisal under the Policy and designated Paul Berger with Claims Solvers as it appraiser. Empire responded by designating its appraiser and ultimately the parties agreed on retired Judge Kahn as the umpire.

12. Aberdeen has based its claim for replacement of all roofs on certain provisions of the 2007 Florida Building Code and Florida Statutes Section 626.9744. For the reasons set forth below, there is no coverage for any roof replacement as allegedly required by the 2007 Florida Building Code and Florida Statutes Section 626.9744 is in-applicable to this claim because it applies only to homeowner's policies. Therefore, Empire is entitled to a declaratory judgment holding that it is not obligated under the Policy to replace the roofs on the buildings that are the subject of the Policy.

## COUNT I

### DECLARATORY RELIEF BASED ON LACK OF COVERAGE FOR CERTAIN PROVISIONS IN THE 2007 FLORIDA BUILDING CODE, EXISTING

13. Plaintiff re-alleges paragraphs 1-12 as if specifically set forth herein.

14. Empire is seeking a declaration that it is only required to pay for the replacement of the damaged tiles and that the policy does not require Empire to pay for the costs incurred in replacing the entire roof as those code requirements did not exist at the time of the loss.

15. The Policy includes, but is not limited to the following relevant portions:

### CONDOMINIUM ASSOCIATION COVERAGE FORM

**4.     Additional Coverages**

****

    **e.**   **Increased Cost of Construction**
- **(1)**   This Additional Coverage applies only to buildings to which the Replacement Cost Optional Coverage applies.

- **(2)**   In the event of damage by a Covered Cause of Loss to a building that is Covered Property, we will pay the increased costs incurred to comply with enforcement of an ordinance or law in the course of repair, rebuilding or replacement of damaged parts of that property, subject to the limitations stated in **e.(3)** through **e.(9)** of this Additional Coverage.

- **(3)**   The ordinance or law referred to in **e.(2)** of this Additional Coverage is an ordinance or law that regulates the construction or repair of buildings or establishes zoning or land use requirements at the described premises, and is in force at the time of loss.

- **(4)**   Under this Additional Coverage, we will not pay any costs due to an ordinance or law that:
  - **(a)**   You were required to comply with before the loss, even when the building was undamaged; and
  - **(b)**   You failed to comply with.

****

**(6)** The most we will pay under this Additional Coverage, for each described building insured under this Coverage Form, is $10,000 or *5%* of the Limit of insurance applicable to that building, whichever is less. If a damaged building is covered under a blanket Limit of insurance which applies to more than one building or item of property, then the most we will pay under this Additional Coverage, for that damaged building, is the lesser of: $10,000 or 5% times the value of the damaged building as of the time of loss times the applicable coinsurance percentage.

The amount payable under this Additional Coverage is additional insurance.

**(7)** With respect to this Additional Coverage:

**(a)** We will not pay for the Increased Cost of Construction:

**(i)** Until the property is actually repaired or replaced, at the same or another premises; and

**(ii)** Unless the repairs or replacement are made as soon as reasonably possible after the loss or damage, not to exceed two years. We may extend this period in writing during the two years.

**(b)** If the building is repaired or replaced at the same premises, or if you elect to rebuild at another premises, the most we will pay for the increased Cost of Construction, subject to the provisions of **e.(6)** of this Additional Coverage, is the increased cost of construction at the same premises.

\*\*\*\*

**(8)** This Additional Coverage is not subject to the terms of the Ordinance or Law Exclusion, to the extent that such Exclusion would conflict with the provisions of this Additional Coverage.

5

    **(9)**  The costs addressed in the Loss Payment and Valuation Conditions, and the Replacement Cost Optional Coverage, in this Coverage Form, do not include the increased cost attributable to enforcement of an ordinance or law. The amount payable under this Additional Coverage, as stated in **e.(6)** of this Additional Coverage, is not subject to such limitation.

  16.  An appraisal hearing was held on May 17, 2010. The day before that hearing, which was a Sunday, Mr. Berger sent by email to Empire's appraiser, a report dated May 8, 2010 that had been prepared by Mr. J. Belliveau, an engineer retained by Aberdeen. The report reflects that Mr. Belliveau had inspected the roofs on April 21-23, 2010. (A copy of Mr. Belliveau's report is attached as Exhibit "B").

  17.  In that report, Mr. Belliveau details finding numerous tiles on the roofs of the 14 buildings that were broken, loose or mismatched as a result of temporary repairs performed by Aberdeen in the past. Mr. Belliveau employed a methodology in which he counted the number of loose tiles in unspecified areas of the roof and then assumed that percentage of loose tiles existed throughout the roof area to calculate an assumed number of loose tiles. He then counted the broken and mismatched tiles that needed to be replaced. However, he also assumed (without any factual or industry support), that roofers repairing the tiles would break four tiles on the roof for every broken or mismatched tile that they replaced. Once that multiplier was applied, the number of tiles that allegedly needed to be replaced exceeded 25% of the total roof areas or roof sections of certain buildings such that he concluded that the roofs on nine of the 14 buildings needed to be replaced as per certain provisions in the 2007 Florida Building Code. Specifically, Mr. Belliveau relied on 2007 Florida Building Code, Existing, Chapter 6, Section 611.(1)(1). (A copy of Chapter 6 is attached as Exhibit "C." This provision is hereinafter sometimes referred to as the "Section 611.(1)(1)").

18. Section 611.(1)(1) reads in pertinent part as follows:

> Not more that 25% or the total roof area or roof section or any existing building or structure shall be replaced, repaired or recovered in any 12 month period unless the entire roofing system or roof section conforms to the requirements of this Code.

19. However, under the CONDOMINIUM ASSOCIATION COVERAGE FORM, Section A. 4., there is a subsection (e) relative to increased construction cost attributable to compliance with or enforcement of an ordinance or law such as the Florida Building Code, and that subsection reads in pertinent part as follows:

> **e.    Increased Cost of Construction**
> **(1)** This Additional Coverage applies only to buildings to which the Replacement Cost Optional Coverage applies.
>
> **(2)** In the event of damage by a Covered Cause of Loss to a building that is Covered Property, we will pay the increased costs incurred to comply with enforcement of an ordinance or law in the course of repair, rebuilding or replacement of damaged parts of that property, subject to the limitations stated in **e.(3)** through **e.(9)** of this Additional Coverage.
>
> **(3) The ordinance or law referred to in e.(2) of this Additional Coverage is an ordinance or law that regulates the construction or repair of buildings** or establishes zoning or land use requirements at the described premises, **and is in force at the time of loss.** [Emphasis Added].

20. Section 611.(1)(1) was not in force at the time Hurricane Wilma allegedly damaged the buildings on October 25, 2005. A copy of the Florida Building Code, Existing, Chapter 5, Section 511 that was in effect at the time of the loss is attached as Exhibit "D." Under the Re-roofing section in force at the time of the loss, there was no 25% rule. The 25% Rule was added and made effective in the 2006 supplement to the Florida Existing Building Code in 2006

and states that if 25% or more of a roof is repaired or replaced, the entire roof must be replaced. (See Exhibit "E").

21. Therefore, an actual controversy exists between the parties as to Empire and Aberdeen's duties and responsibilities in regard to the requirements of the insurance policy attached hereto as Exhibit "A." Because the increased cost of construction in the form of a roof replacement that Coves would incur according to Mr. Belliveau's report and findings, are not covered by the Policy, Empire is entitled to a declaration from this Court that the cost of replacing undamaged tiles, which is required by the statute is not covered.

22. Empire has complied with all conditions precedent or they have been waived by Aberdeen.

## COUNT II
## DECLARATORY RELIEF

23. Plaintiff re-alleges paragraphs 1 through 22 as if specifically set forth herein.

24. Empire seeks a declaration prior to the conclusion of the appraisal proceeding that the Policy at issue and all applicable Florida Statutes and local codes do not require Empire to replace all of the roof tiles on Aberdeen's condominium buildings if it can not match the existing, undamaged tiles, because under the Loss Payment provisions of the Policy, Empire can make an election to pay for the damaged property, rather than repair and replace the property.

25. Defendant, Aberdeen contends that the insurance policy issued by Empire to Aberdeen and Florida Statute §626.9744 requires Empire to match the broken tiles with the existing tiles, and if they can not be matched, then Aberdeen is requesting additional policy benefits in order for all of the roof tiles to be replaced.

8

26. Florida Statute §626.9744 provides in pertinent part,

> Unless otherwise provided by the policy, when a homeowner's insurance policy provides for the adjustment and settlement of first-party losses based on repair or replacement cost, the following requirements apply:
>
> (1) When a loss requires repair or replacement of an item or part, any physical damage incurred in making such repair or replacement which is covered and not otherwise excluded by the policy shall be included in the loss to the extent of any applicable limits. The insured may not be required to pay for betterment required by ordinance or code except for the applicable deductible, unless specifically excluded or limited by the policy.
>
> (2) When a loss requires replacement of items and the replaced items do not match in quality, color, or size, the insurer shall make reasonable repairs or replacement of items in adjoining areas. In determining the extent of the repairs or replacement of items in adjoining areas, the insurer may consider the cost of repairing or replacing the undamaged portions of the property, the degree of uniformity that can be achieved without such cost, the remaining useful life of the undamaged portion, and other relevant factors.

27. Florida Statute §631.54 defines a "homeowners policy" as specifically excluding "commercial residential policies covering condominium associations or homeowners' associations, which associations have a responsibility to provide insurance coverage on residential units within the association, and also excludes coverage for the common elements of a homeowners' association."

28. The Policy contains the following loss payment clause:

> **4.  Loss Payment**
>
> a. In the event of loss or damage covered by this Coverage Form, at our option, we will either:
>
> (1) Pay the value of lost or damaged property;
> (2) Pay the cost of repairing or replacing the lost or damaged property, subject to **b.** below;
> (3) Take all or any part of the property at an agreed or appraised value; or

>> (4) Repair, rebuild or replace the property with other property of like kind and quality, subject to **b.** below.

…

29.     Empire contends that the policy of insurance it issued to Aberdeen does not require it to match the tiles, and that Florida Statute §626.9744 only applies to residential, homeowners policies, not commercial policies covering residential condominium associations, such as the Policy at issue.  This Court recently resolved this issue in *Strasser v. Nationwide Mutual Insurance Co.*, 2010 WL 667945 (S.D. Fla.), whereby the Court held that Florida Statute §626.9744 does not apply to a commercial policy that provides the insurer the right to select whether to pay for the damage or repair and replace the damage, and therefore the insurer is not required to "match" the damaged property if it does not elect the repair or replace option. *Strasser* Order attached as Exhibit "F."

30.     Empire has not elected the repair or replace option, but rather, it has elected to pay for any damage that the defendant may be entitled, pursuant to the appraisal award, for the tiles that were specifically damaged as a result of Hurricane Wilma, and therefore, it does not have a responsibility to "match" the damaged tiles to the existing, undamaged tiles.

31.     An actual controversy exists between the parties as to Empire's duties and responsibilities in regard to the claims of Aberdeen based upon the insurance policy attached hereto as Exhibit "A," Florida Statute §626.9744, all other applicable Florida Statutes, and applicable local codes. Because that statute does not apply to the Policy at issue in this case, Empire is entitled to a declaratory judgment by this Court that it is not obligated to replace the roofs on the 14 buildings at Coves.

32.     Empire is in doubt as to its rights under the Policy.  Therefore a judicial controversy exists regarding the parties' duties and responsibilities to one another.

33. Empire has complied with all conditions precedent or they have been waived by Aberdeen.

## COUNT III
## INJUNCTIVE RELIEF

34. Plaintiff re-alleges paragraphs 1 through 34 as if specifically set forth herein.

35. During the appraisal process an issue has arisen that is outside the scope of the appraiser, which must be decided by this Court.

36. Specifically, whether the entire roof must be replaced as the insured has requested, pursuant to Florida Statute §626.9744 and the Florida Building Code, which amounts to a question of law and coverage, and not a question of liability.

37. Questions of coverage are for the court to decide, while questions of liability are for the appraiser to decide, and a stay of the appraisal process is proper when coverage issues arise prior to or during an appraisal. *State Farm Fire and Casualty Co. v. Wingate*, 604 So.2d 578 (Fla. 4th DCA 1992). (Attached as Exhibit "G").

38. Whether F.S. 626.9744 and the Florida Building Code require the plaintiff to replace Aberdeen's entire roof is clearly a coverage issue that can not be decided by the appraiser, and the appraisal process must be stayed pending a resolution to these coverage issues.

**WHEREFORE**, EMPIRE INDEMNITY INSURANCE COMPANY requests the following relief:

(a). That this Court enter a judgment that the Empire Policy does not provide coverage for the costs and expenses of replacing entire roof sections as a result of the 2006 Florida Existing Building Code; and

(b). That this Court enter a judgment declaring that the Empire Indemnity Insurance Company Policy at issue, and Florida Statute §626.9744 does not require Empire to match the broken tiles to the existing tiles as Aberdeen contends, pursuant to *Strasser v. Nationwide Mutual Insurance Co.*, 2010 WL 667945 (S.D. Fla.); and

(c). Stay the appraisal proceeding pending resolution of issues of law and coverage; and

(d). Award Empire any further relief the Court deems just and proper under the circumstances.

**DATED** this 10th day of June, 2010.

RESPECTFULLY SUBMITTED,

/s/ *J. Michael Grimley, Jr.*
J. MICHAEL GRIMLEY, JR., ESQUIRE
Florida Bar No.: 0667234
Galloway, Johnson, Tompkins, Burr & Smith, PLC
118 East Garden Street
Pensacola, Florida 32502
(850) 436-7000 Telephone
(850) 436-7099 Facsimile
E-mail: mgrimley@gjtbs.com
*Counsel for Empire Indemnity Insurance Company*